UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X
                                                             :

JOAN KOMINIS and JASON MCALLISTER,     :
Individually and on Behalf of All Others Similarly   :
Situated,                                           :

                                   :               22 Civ. 6673 (JPC)
                      Plaintiffs,         :

                                   :              <u>OPINION AND ORDER</u>
          -v-                         :

                                   :

STARBUCKS CORPORATION,                 :

                    Defendant.        :

                                   :
----------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiffs Joan Kominis and Jason McAllister bring this putative class action against

Defendant Starbucks Corporation ("Starbucks") asserting numerous causes of action related to the

allegedly misleading names of several beverages sold by Starbucks. Plaintiffs' Amended

Complaint alleges violations of section 349 of the New York General Business Law ("NYGBL"),

Dkt. 18 ("Am. Compl.") ¶¶ 37-44 (the "First Cause of Action"); section 350 of the NYGBL, *id.*

¶¶ 45-53 (the "Second Cause of Action"); California's Consumers Legal Remedies Act ("CLRA"),

Cal. Civ. Code §§ 1750 *et seq.*, Am. Compl. ¶¶ 54-63 (the "Third Cause of Action"); California's

False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*, Am. Compl. ¶¶ 64-68

(the "Fourth Cause of Action"); California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.

Code §§ 17200 *et seq.*, Am. Compl. ¶¶ 69-75 (the "Fifth Cause of Action"); New York's express

warranty statute, N.Y. U.C.C. § 2-313, Am. Compl. ¶¶ 76-84 (the "Sixth Cause of Action");

California's express warranty statute, Cal. Com. Code § 2313, Am. Compl. ¶¶ 85-92 (the "Seventh

Cause of Action"); New York's implied warranty statute, N.Y. U.C.C Law § 2-314, Am. Compl.

¶¶ 93-101 (the "Eighth Cause of Action"); and California's implied warranty statute, Cal. Com. Code § 2314,[1] Am. Compl. ¶¶ 102-108 (the "Ninth Cause of Action"); as well as unjust enrichment, *id.* ¶¶ 109-115 (the "Tenth Cause of Action"), and common law fraud, *id.* ¶¶ 116-124 (the "Eleventh Cause of Action").

Starbucks moves to dismiss all eleven Causes of Action. The Court grants the motion in part and denies it in part. Because Plaintiffs have adequately alleged that a significant portion of the general consuming public could be misled by the names of the at-issue beverages, the Court denies the motion to dismiss the first seven Causes of Action. Starbucks has not adequately addressed the specific statutory provisions under which Plaintiffs bring the Eighth and Ninth Causes of Action, and so the Court denies the motion with respect to them as well. But the Tenth Cause of Action, which pleads unjust enrichment, fails because it is duplicative of the NYGBL claims and because it cannot be brought under California law in conjunction with an express warranty claim. Plaintiffs also have failed to sufficiently plead scienter to support a fraud claim, requiring dismissal of the Eleventh Cause of Action. The Court therefore dismisses the Tenth Cause of Action with prejudice and grants leave to amend with respect to the Eleventh Cause of Action.

---

[1] The heading for the Ninth Cause of Action, titled "Violations of Breach of Implied Warranty Statute," seems to mistakenly cite section 2313 of the California Commercial Code, which is California's express warranty statute, rather than section 2314, which is discussed in the allegations making up this Cause of Action. *Compare* Am. Compl. at 24 (Ninth Claim for Relief) *with id.* ¶¶ 104-105.

# I. Background

## A.     Facts[2]

This case involves Starbucks's marketing of certain "fruit-based" beverages whose names include specific fruits.   Those beverages are the "Mango Dragonfruit Lemonade Starbucks Refreshers" and the "Mango Dragonfruit Starbucks Refreshers," which Plaintiffs allege contain no mango; the "Strawberry Açaí Lemonade Starbucks Refreshers" and the "Strawberry Açaí Starbucks Refreshers," which Plaintiffs allege contain no açaí; and the "Pineapple Passionfruit Lemonade Starbucks Refreshers" and the "Pineapple Passionfruit Starbucks Refreshers," which Plaintiffs allege contain no passion fruit (collectively, the "Products").   Am. Compl. ¶¶ 2-3. Plaintiffs allege that they "purchased the Products and paid a premium price based upon their reliance on Starbucks's naming of the Products." *Id.* ¶ 4.  They further allege that had they "and other consumers been aware that the Products are missing one of the named fruits, . . . they would not have purchased the Products or would have paid significantly less for them." *Id.*; *see also id.* ¶ 21 ("The reasonable belief that the Products contain all their advertised fruits was a significant factor in Plaintiffs and other class members' decision to purchase the Products.").[3]

---

[2] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Amended Complaint. *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").

[3] Plaintiffs make specific allegations as to their purchases of the strawberry açaí drinks. Kominis alleges that she purchased the Strawberry Açaí Lemonade Refresher at multiple Starbucks locations in New York in 2021, believing "that the Product contained acai," and that she "did not see any statement or information on the Starbucks menu board which informed her that there was no acai in the Product."   Am. Compl. ¶ 5.  McAllister similarly alleges that he purchased the Strawberry Açaí Refresher in 2022 in California and did not realize that the drink lacked açaí. *Id.* ¶ 6.

Starbucks is a coffee and beverage chain that "is responsible for the formulation, manufacturing, marketing, naming, advertising, and sale of its beverage products," including the Products at issue in this case. *Id.* ¶¶ 7, 11. The Products are "part of [Starbucks's] 'Refresher' line of beverages, marketed as fruit-based beverages." *Id.* ¶ 12. The Products are marketed with the following images, which Plaintiffs claim show that "the presence of fruit in the Products is central to the Products' identity." *Id.* ¶ 15.



*Id.* at 5.



*Id.* at 6.  Based on this advertising, Plaintiffs allege that "reasonable consumers purchase the Products with the expectation that the Products contain *all* the fruits clearly listed in their respective names," *id.* ¶ 16, yet the Products are each missing either mango, passion fruit, or açaí, *id.* ¶ 17.  Instead of containing these fruits, "all of the Products are predominantly made with water, grape juice concentrate, and sugar."  *Id.* ¶ 18.  The Products thus differ from other Starbucks

products: "Starbucks' hot chocolate contains cocoa, its matcha lattes contain matcha, and its honey mint tea contains honey and mint." *Id.* ¶ 19. Moreover, "the Products do in fact contain freeze-dried pieces of strawberries, pineapple, and dragon fruit." *Id.* Starbucks does not affirmatively indicate anywhere which ingredients are and are not in the Products. *Id.* ¶ 20.

Plaintiffs allege that the "missing fruit ingredients are important to consumers because they are premium ingredients, and consumers value them over the less nutritious and cheaper grape juice concentrate found in the Products" at least in part because of nutritional benefits from each of the respective fruits or their juices. *Id.* ¶ 21. Further, Plaintiffs allege that Starbucks "knew or should have known that the Products falsely and deceptively represent to contain certain ingredients that they do not contain," and that consumers "would rely on [Starbucks's] advertising" such that they would be "willing to pay more for the Products based on the belief that the Products contain mango, passionfruit, and acai," allowing Starbucks to charge higher prices than they otherwise would be able to charge. *Id.* ¶¶ 22-24.

**B.    Procedural History**

Kominis initiated this action on August 5, 2022. Dkt. 1. After Starbucks filed a motion to dismiss on September 15, 2022, Dkts. 14-15, Plaintiffs filed the Amended Complaint on October 7, 2022, Dkt. 18, which added McAllister as a Plaintiff. Starbucks then filed another motion to dismiss on November 9, 2022, seeking to dismiss all eleven Causes of Action in the Amended Complaint. Dkts. 23, 24 ("Motion"). Plaintiffs opposed dismissal on December 7, 2022, Dkt. 27 ("Opposition"), and Starbucks filed a reply on December 16, 2022. Dkt. 28 ("Reply").

## II.  Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  In making this determination, the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015), but it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

## III.  Discussion

### A.    "Reasonable Consumer" Claims

Starbucks first argues that Plaintiffs' first five Causes of Action—which allege violations of the NYGBL, the CLRA, the UCL, and the FAL—each fail because no reasonable consumer would be misled by the Products' names into thinking that the Products contain the missing fruit. Motion at 6.

Section 349 of the NYGBL declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  NYGBL § 349(a).  Section 350 prohibits "[f]alse advertising in the conduct of any business, trade, or commerce or in the furnishing of any service."  *Id*. § 350.  Sections 349 and 350 are both aimed at conduct that is deceptive—*i.e.*, conduct "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995).  "The only difference between the two is that Section 350 more narrowly targets deceptive or misleading advertisements, while Section 349 polices a wider range of business practices."  *Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628, 635 (S.D.N.Y. 2016);

*see Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002). To state a claim under either section 349 or section 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012)).

To survive a motion to dismiss a consumer fraud claim brought under New York law, a plaintiff must plausibly allege facts showing that the statements were "'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (quoting *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 26). Plausibility in this context "demands 'more than a sheer possibility that a defendant acted unlawfully,'" *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678), and considers "'the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable,'" *id.* (quoting *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011)). In determining whether the Products' names are misleading, this Court applies an objective test, viewing the allegedly misleading statement in the context of the Products' advertising as a whole. *See Cosgrove v. Blue Diamond Growers*, No. 19 Civ. 8993 (VM), 2020 WL 7211218, at *3 (S.D.N.Y. Dec. 7, 2020); *Pichardo v. Only What You Need, Inc.*, No. 20 Civ. 493 (VEC), 2020 WL 6323775, at *2 (S.D.N.Y. Oct. 27, 2020); *see also Fink*, 714 F.3d at 742 (explaining that "[t]he primary evidence in a consumer-fraud case arising out of allegedly false advertising is, of course, the advertising itself," and "context is crucial"). While it is well settled that in appropriate circumstances, a court may determine at the motion to dismiss stage that an allegedly deceptive misrepresentation would not have misled a reasonable consumer

as a matter of law, *see Fink*, 714 F.3d at 741, multiple courts have indicated that such relief should rarely be granted, *see, e.g.*, *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 242 (S.D.N.Y. 2020); *Hertz Corp. v. Accenture LLP*, No. 19 Civ. 3508 (WHP), 2019 WL 5537997, at *4 (S.D.N.Y. Oct. 25, 2019). That is because the question of whether a representation is materially misleading "is generally a question of fact not suited for resolution at the motion to dismiss stage." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020).

Turning to the California statutes pleaded by Plaintiffs, the CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices" in the sale of consumer goods, CLRA § 1770(a)(5), the UCL makes actionable "any unlawful, unfair or fraudulent business act or practice," UCL § 17200, and the FAL prohibits "untrue or misleading" advertising, FAL § 17500. Claims under each of these statutes are similarly governed by the reasonable consumer test. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("Appellants' claims under [the UCL, FAL, and CLRA] are governed by the 'reasonable consumer' test.").

Although it is well settled that a plaintiff's NYGBL claims may be dismissed as a matter of law under the reasonable consumer standard, district courts in this Circuit have offered various articulations of the minimal pleading required to survive a defendant's motion to dismiss a consumer fraud claim. *See e.g.*, *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 278 (E.D.N.Y. 2021) (explaining that a defendant "seeking to dismiss a false labeling claim must 'extinguish . . . the possibility' that a reasonable consumer could be misled" (quoting *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM), 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013))); *Fishon v. Peloton Interactive, Inc.*, No. 19 Civ. 11711 (LJL), 2020 WL 6564755, at *7 (S.D.N.Y. Nov. 9, 2020) ("On a motion to dismiss, the Court considers whether

the complaint plausibly alleges that a reasonable consumer would ascribe the meaning that plaintiffs allege they ascribed to it."); *Hesse*, 463 F. Supp. 3d at 467 ("Dismissal is warranted only in a 'rare situation' where 'it [is] impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived.'" (quoting *Williams*, 552 F.3d at 939 (alteration in original))).  In two unpublished summary orders, the Second Circuit has enunciated a standard which appears to fall on the more demanding side for a plaintiff.  *See Axon v. Florida's Natural Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020) ("To survive a motion to dismiss, plaintiffs must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled by the relevant statements." (internal quotation marks and brackets omitted) (quoting *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018))); *Jessani*, 744 F. App'x at 19 (explaining that "plaintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers,'" but instead "must plausibly allege 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled'" (quoting *Ebner v. Fresh Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)))).

Somewhat confusingly, the various formulations of the minimum pleading standard in this context appears to be the result of an unstated change in the Ninth Circuit's approach to handling cases under California's "reasonable consumer" statutes, as cases articulating the less stringent standard often ultimately cite back to or quote the Ninth Circuit's decision in *Williams. See, e.g.*, *Grossman*, 516 F. Supp. 3d at 281 (quoting *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *16 (quoting *Ackerman v. Coca-Cola Co.*, No. 09 Civ. 395 (JG) (RML), 2010 WL 2925955, at *16 (E.D.N.Y. July 21, 2010) (citing *Williams*, 552 F.3d at 939-40))); *Hesse*, 463 F. Supp. 3d at 467.  The standard articulated in *Jessani* was itself taken from another post-*Williams*

Ninth Circuit case, *Ebner*, which cited *Williams* favorably for the proposition that "claims under the California consumer protection statutes are governed by the 'reasonable consumer' test," 838 F.3d at 965, while taking the "significant portion of the general consuming public" standard from the California Court of Appeal decision in *Lavie v. Proctor & Gamble Co.*, 129 Cal. Rptr. 2d 486 (Ct. App. 2003), without any discussion of how that standard differed from any articulated in *Williams*, *see Ebner*, 838 F.3d at 965. The Ninth Circuit continues to utilize the "significant portion of the general consuming public" standard. *See McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023).

Ultimately, the Court need not decide which standard controls, because as discussed *infra*, Plaintiffs' allegations meet even the more demanding requirement.

Starbucks presents three arguments in support of dismissal of the first five Causes of Action. First, it argues that the Products' names accurately describe the *flavors* as opposed to the *ingredients* of the Products. Motion at 8. Second, it argues that its advertising accurately represents the Products' fruit content. *Id.* at 11. And third, it argues that any potential consumer confusion would be dispelled by information available from Starbucks's baristas. *Id.* at 13.

### 1.    The Accuracy of Starbucks's Product Names and Advertising

The Court begins with Starbucks's first two arguments, which concern the Products' names and advertising. "[C]ourts in this Circuit have sustained claims where the language of the product label, in context, referred not only to a flavor but also indicated the presence of an ingredient." *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 678 (S.D.N.Y. 2021). "[C]ontext is crucial" for a court's determination of "whether a reasonable consumer would have been misled by a particular advertisement." *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2009). Here, the Products' names are listed without any affirmative statement one way or the other as to whether they contain the actual fruits in the names or are merely flavored like those fruits. No ingredients

list is provided for the Products. Rather, written above the images of two of the Products (the Mango Dragonfruit Lemonade Starbucks Refreshers and the Strawberry Açaí Lemonade Starbucks Refreshers) is that they are "crafted with refreshing lemonade" and written above the image of a different Product (the Pineapple Passionfruit Starbucks Refreshers) is a description of it and another drink as "sunny new drinks bursting with pineapple." Am. Compl. at 5; *see id.* ¶ 20 ("Notably, nowhere does Starbucks disclose that these Products are missing their promised ingredients."). Images of the Products show pieces of fruits floating in the beverages—fruits which are actually present in the Products. *Id.* at 5, ¶ 19. Other fruits not depicted also are contained in the drinks. *See id.* ¶ 19. Parts of the Products' names actually do refer to both a flavor and an ingredient, such as the "Strawberry" in "Strawberry Açaí" and "Strawberry Açaí Lemonade" (which drinks contain actual strawberry but only açaí flavor), the "Dragonfruit" in "Mango Dragonfruit" and "Mango Dragonfruit Lemonade" (which drinks contain actual dragon fruit but only mango flavor), and the "Pineapple" in "Pineapple Passionfruit" and "Pineapple Passionfruit Lemonade" (which drinks contain pineapple but only passion fruit flavor). Some drinks listed alongside the Products have names that do not appear to reference an ingredient, such as the "Pink Drink" and possibly the "Dragon Drink" (depending on whether "Dragon" is a reference to dragon fruit), while others have names that do accurately refer to ingredients, such as the "Ice Matcha Tea Latte" which contains matcha, *id.* ¶ 19, and the "Honey Citrus Mint Tea" which contains honey and mint, *id.*

The effect of this full context of the Products' names and advertising is mixed, though the Court ultimately determines that a significant portion of reasonable consumers could find it misleading. Unlike in some cases, no information in the name or advertising for the Products affirmatively informs the consumer whether a fruit name indicates a flavor or ingredient. For

instance, a Product is not named "Açaí-Flavored Strawberry Starbucks Refresher" or "Mango-Flavored Dragonfruit Starbucks Refresher" or "Passionfruit-Flavored Pineapple Starbucks Refresher."  In fact, depending on the fruit, parts of the name of each Product actually does refer to *both* a flavor and an ingredient: as noted, that is the case with strawberry, dragon fruit, and pineapple.  And for three of the Products—the Mango Dragonfruit Lemonade Refresher, the Strawberry Açaí Lemonade Refresher, and the Pineapple Passionfruit Lemonade Refresher—Starbucks's position necessarily would entail that two of the three parts of each name refer to actual ingredients (*i.e.*, dragon fruit, strawberry, pineapple, and lemonade), yet that a reasonable consumer would somehow know the third term (*i.e.*, mango, açaí, and passion fruit) does not.  The images of several of the Products add to this information jumble, in that they depict the Products containing actual pieces of fruit, just not the fruit apparently desired by Plaintiffs.  Starbucks argue that this fact weighs in their favor, because a reasonable consumer would see, for example, an image of a strawberry in the Product without an açaí berry and thereby conclude that the beverage contains only real strawberry.  Motion at 11-12.  But it is equally if not more plausible that the image of real fruits would indicate to a consumer that the drink contains all, not only part, of the fruits mentioned in the Products' name, especially given that fruit may be present in a drink in a non-visible form, such as a juice.  The same is the case with respect to the names of other drinks listed alongside the Products.  *See* Am. Compl. at 6.  A consumer seeing drinks named "Pink Drink" and "Dragon Drink" on the menu may think that all of the names are similarly fanciful or that *only* the fanciful names without a fruit reference do not indicate the presence of actual fruit in the drink.  The use of the descriptor "pink" and "dragon" in these names also could add to the overall confusion regarding the Products, since the terms do not clearly refer to a flavor or an ingredient (although perhaps a consumer could associate "dragon" with dragon fruit).  And other

products listed on the same menu, such as the "Ice Matcha Tea Latte" which contains matcha, Am. Compl. ¶ 19, and the "Honey Citrus Mint Tea" which does contain honey and mint, *id.*, again contribute to a reasonable conclusion that the names of the Products refer to their ingredients as well as their flavors. In short, the Court concludes that from the full context of the Product names and advertising, a significant portion of the general consuming public could reasonably believe that the Products contain the missing fruits.

The allegations here admittedly fall short of those in cases where a product's packing featured affirmative statements indicating the presence of something as an ingredient rather than merely a flavor. In *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), for example, the Second Circuit reversed a dismissal of a claim based on allegations that a cracker was described as "whole grain" and "made with whole grain" in part because those statements "communicate to the reasonable consumer that the grain in the product is predominately, if not entirely, whole grain," with the remainder of the product's packaging failing to indicate the share of the grain content that was whole grain. *Id.* at 637. There is no affirmative and clear statement that the Products are "made with" the missing fruits.

Yet the cases relied upon by Starbucks are distinguishable. In *Angeles v. Nestle U.S.A., Inc.*, 632 F. Supp. 3d 309 (S.D.N.Y. 2022), the Court dismissed a consumer's claim that she was deceived by a lemon-flavored water which did not contain appreciable amounts of actual lemon. But the packaging on the water stated clearly that it "contains no juice" and was in fact "flavored mineral water." *Id.* at 316. No such disclaimers are present in any of the advertisements of the Products in this case. Similarly, in *Oldrey v. Nestle Waters North America, Inc.*, No. 21 Civ. 3885 (NSR), 2022 WL 2971991 (S.D.N.Y. July 27, 2022), the Court dismissed a claim regarding a statement on a sparkling water's label describing that drink as, "With a Twist of Raspberry Lime,"

but the "Product's full label and ingredients list confirm that the Product is merely raspberry and lime flavored." *Id.* at *4 (S.D.N.Y. July 27, 2022). Likewise, the conclusion of the court in *Cruz v. D.F. Stauffer Biscuit Co., Inc.*, No. 20 Civ. 2402 (PGG) (JLC), 2022 WL 4592616 (S.D.N.Y. Sept. 29, 2022), to dismiss the plaintiff's NYGBL claims was supported in part by the fact that the product's packaging contained an ingredients label stating that the product contained "natural and artificial flavors," which was "consistent with [the defendant's] representations . . . about the source of the Product's lemon flavor." *Id.* at *5, 8; *see also Wallace v. Wise Foods, Inc.*, No. 20 Civ. 6831 (JPO), 2021 WL 3163599, at *2 (S.D.N.Y. July 26, 2021) (dismissing claim based on the allegation that cheddar and sour cream chips were not flavored exclusively with cheddar and sour cream where the "chips in question are labeled as 'Cheddar & Sour Cream Flavored'" and the ingredients label, "which is consistent with Wise's representations on the front of its packaging, explains that the chips contain cheddar cheese and sour cream while informing that they contain lesser amounts of artificial flavoring"); *Brown v. Starbucks Corp.*, No. 18 Civ. 2286 (JM) (WVG), 2019 WL 996399, at *1, 3 (S.D. Cal. Mar. 1, 2019) (dismissing claim that a reasonable consumer would be misled by packaging into believing the subject candy contained only natural ingredients where the packaging described "[a]pple, watermelon, tangerine and lemon flavored candies" and listed ingredients including artificial ingredients, and further observing that a claim that "consumers are not unreasonable to assume that a Product that lists an assortment of fruit flavors on its front label contains either the actual fruit, fruit concentrate, fruit puree, or fruit essence of the fruit listed" "might not be dismissed at the motion to dismiss stage").

Moreover, in contrast with the use of the term "vanilla," which has been the subject of several prior cases, nothing before the Court indicates that "mango," "passionfruit," and "açaí" are terms that typically are understood to represent a flavor without also representing that ingredient.

*See Nacarino v. Chobani, LLC*, No. 20 Civ. 7437 (EMC), 2021 WL 3487117, at \*5 (N.D. Cal. Aug. 9, 2021) ("The label 'vanilla' most commonly denotes the flavor of the product . . . ."); *Pichardo*, 2020 WL 6323775, at \*5 ("The label 'Smooth Vanilla' is not misleading because, absent additional facts . . . , reasonable consumers associate the word 'vanilla' with a flavor, not with an ingredient."); *Cosgrove*, 2020 WL 7211218, at \*3 ("That association, of 'Vanilla' as a flavor and not an ingredient, is borne out by consumers' practical use of the representation."). There is no comparable term that appears to distinguish the flavors of mango, passion fruit, and açaí from the actual presence of those fruits, as vanilla *bean* may do for vanilla. To the contrary, it is plausible that a reasonable consumer purchasing a fruit drink, like one of the Starbucks Refreshers, is likely to expect that the drink actually contains the fruit mentioned in the drink's name. *Cf. Cosgrove*, 2020 WL 7211218, at \*3 ("For example, here, the consumer in the grocery store is looking, first and foremost, for almond milk – not vanilla."). And, as in *Campbell v. Whole Foods*, 516 F. Supp. 3d 370 (S.D.N.Y. 2021), which concerned use of the term "honey," nothing before the Court indicates that the fruit flavoring in fruit drinks is frequently created by something other than a fruit ingredient. *Id.* at 385 ("Unlike in the manifold cases evaluating descriptions of 'vanilla' products, there is no basis in the complaint for the Court to conclude that the flavor of honey can come from a product other than honey." (citation omitted)).

Finally, Starbucks's reliance on *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492 (2d Cir. 2020), and *Werbel v. Pepsico, Inc.*, No. 09 Civ. 4456 (SBA), 2010 WL 2673860 (N.D. Cal. July 2, 2010), is misplaced. *See* Motion at 10-12. In *Chen*, the Second Circuit determined that a reasonable consumer would not be misled to think that the word "steak" in an "Angus steak" sandwich would refer to an "intact" piece of meat rather than a "ground beef patt[y]" in part because of television advertisements depicting zoomed in images of the "steak" that showed it to be a ground beef patty.

954 F.3d at 496-97, 501. These images directly disclosed the alleged misleading practice, whereas the images of fruit in the advertisements for the Products do not directly demonstrate that other fruits will not be present, and indeed other fruits or their juices not depicted are in fact present in the Products. In *Werbel*, the court dismissed UCL, FAL, and CRLA claims based on allegations that members of the public would be deceived into believing that "Cap'n Crunch" cereal would "derive[] nutrition from actual fruit by virtue of the reference to 'Berries' [in the term 'Crunch Berries'] and because the Crunch Berries allegedly are 'shaped to resemble berries.'" 2010 WL 2673860, at *3-5. Rejecting such a claim as "[n]onsense," the court determined that it was "obvious from the product packaging that no reasonable consumer would believe that Cap'n Crunch derives any nutritional value from berries" because, in part, depictions of the Crunch Berries did not "even remotely resemble any naturally occurring fruit of any kind. There are no representations that the Crunch Berries are derived from real fruit nor are there any depictions of any fruit on the cereal box." *Id.* at *3. In this case, there is not somehow an image of the Products which suggests the *absence* of the missing fruits, and the Court has already described why the presence of certain fruit in pictures of the Products could be deceptive as to the presence of other fruits.

Most persuasive here is *Campbell*, which involved honey graham crackers sold at Whole Foods. In *Campbell*, the court determined that the plaintiff had adequately stated an NYGBL claim "because a reasonable consumer could understand the references to 'Honey' and 'Graham' on the product's packaging to be statements regarding the predominant ingredients in the crackers." 516 F. Supp. 3d at 380-81. The court in *Campbell* reasoned that "'Graham' refers to whole wheat flour" and "[a] consumer who knows that 'graham' refers to 'whole wheat' flour is likely to read the product packaging as a description of the cracker's ingredients." *Id.* at 382. The court noted

that the "front label of the product at issue did not say that the crackers were 'made with' graham" but "the absence of those words is not dispositive." *Id.* Having determined that "graham" referred to an ingredient, the court reasoned that "honey" also seemed to refer to an ingredient in part because of the similar presentation of the words, "honey" and "graham," on the packaging. *Id.* at 385. Additionally, the court noted that "honey is both a flavor and a sweetening ingredient. So even if 'honey' were intended solely as a reference to the flavor of the Product, a reasonable consumer could expect that the source of the honey flavor was actual honey—an ingredient." *Id.*[4] Here too, the words "mango," "passionfruit," and "açaí" are words which may indicate a flavor or the presence of an ingredient. They are displayed alongside similar terms—strawberry, pineapple, and dragon fruit—which a consumer would be correct to think actually describe both a flavor and an ingredient of the Products. Regardless of whether Starbucks intended for each fruit name in the Products to reflect an actual ingredient, a significant portion of reasonable consumers could plausibly be misled into thinking that such is the case.[5]

---

[4] Starbucks relies on *Warren v. Stop & Shop Supermarket, LLC*, 592 F. Supp. 3d 268 (S.D.N.Y. 2022), where the court concluded that a reasonable consumer would not find misleading the term "honey" on a label for graham crackers that did not in fact contain honey. *Id.* at 277-80; *see* Motion at 16. But the court in *Warren* expressly distinguished its facts from those in *Campbell*, explaining that the product's use of "honey" in a smaller font and different colors below the words "Graham Crackers" would cause a reasonable consumer to associate it with the product's flavor. *Warren*, 592 F. Supp. 3d at 279 ("Thus, *Campbell* is distinguishable because the label here depicts the word 'honey' in a smaller white font with an orange background immediately below the words 'Graham Crackers' in a larger blue font—which suggests the term 'honey' is subordinate to 'Graham Crackers.'"). Here, there would be no reason for a consumer to think that the Products' names include "mango," "passionfruit," and "açaí" in a manner subordinate to the inclusion of actual ingredients in the Products.

[5] *Atik v. Welch Foods, Inc.*, No. 15 Civ. 5405 (MKB) (VMS), 2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016), is also somewhat persuasive. There, the district court denied a motion to dismiss claims under the NYGBL, the CLRA, the UCL, and the FAL involving packaging on Welch's Fruit Snacks, concluding that a reasonable consumer could be misled by that packaging. That packaging "depicts pictures of actual fruits and states that the Products are 'made with real fruit,'" and the products at issue "contain some of the fruit depicted on the label" though the "primary

## 2.    Whether Starbucks Employees Might Resolve Any Consumer Confusion

Starbucks next argues that any confusion experienced by a consumer could be dispelled by asking a Starbucks employee about the Products' ingredients. This argument fails for the simple reason that it assumes the truth of facts not asserted within the Amended Complaint, namely that Starbucks's employees are aware of the full ingredient list of each of the Products. *See, e.g.*, *Nakahata v. N.Y.-Presbyterian Healthcare Sys.*, 723 F.3d 192, 202 (2d Cir. 2013) ("We do not consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim."). In *Wallace,* relied on by Starbucks, *see* Motion at 13, the ingredients label that could dispel consumer confusion was alleged in the operative complaint. *Wallace*, 2021 WL 3163599, at *2; *Wallace v. Wise Foods, Inc.*, No. 20 Civ. 6831 (JPO) (S.D.N.Y.), Dkt. 16 ¶ 30. And *Rubenstein v. The Gap, Inc.*, also relied on by Starbucks, *see* Motion at 13, is a state case and did not apply federal pleading or motion to dismiss standards. 14 Cal. App. 5th 870, 875 (2017).

But even to the extent it might consider such an argument, the Court rejects it on its merits. The Second Circuit has held that a "reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box." *Mantikas*, 910 F.3d at 637. Similarly, a reasonable consumer should not be expected to ask a store employee whether a product named with multiple ingredients actually contains at least some of those ingredients.

* * *

---

ingredients are juices from concentrate of fruits other than the fruits depicted on the Products' label." *Id.* at *10. Here, a consumer might similarly be misled by the Products' names containing fruits into believing that the Products contained those fruits or their juices. Yet *Atik* is not on all fours with this case, as Starbucks did not depict any fruits which were not actually contained in the Products.

Ultimately, based on the allegations in the Amended Complaint, the Court concludes that a significant portion of reasonable consumers could be misled by mistakenly assuming "the words [in the names of the Products] to say what they mean." *Campbell*, 516 F. Supp. 3d at 385. Therefore, the Court denies Defendants' motion to dismiss the first five Causes of Action for violations of the NYGBL, the CLRA, the FAL and the UCL.

**B.      Breach of Express Warranty**

Starbucks argues that Plaintiffs' claims for breach of express warranty in the Sixth and Seventh Causes of Action fail for essentially the same reasons that they argue that Plaintiffs' NYGBL, CLRA, UCL, and FAL claims fail. Motion at 17; Reply at 8. Because, for the reasons stated, Plaintiffs' NYGBL, CLRA, UCL, and FAL claims survive, Starbucks's motion to dismiss is denied with respect to the Sixth and Seventh Causes of Action. *See supra* III.A.

**C.      Breach of Implied Warranty**

Starbucks argues that Plaintiffs have failed to allege their implied warranty claims because the Products were fit for human consumption. Motion at 17-18. Plaintiffs bring the Eighth and Ninth Causes of Action for breach of implied warranty under section 2-314(2)(f) of the New York Uniform Commercial Code and section 2314(2)(f) of the California Commercial Code, respectively. Am. Compl. ¶¶ 96, 105; *see also* Opposition at 21 ("Plaintiffs' implied warranty claims are based on California Commercial Code § 2314(2)(f) and N.Y. U.C.C. § 2-314(2)(f).")." Both provisions require that goods "[c]onform to the promises or affirmations of fact made on the container or label if any." N.Y. U.C.C. § 2-314(2)(f); Cal. Comm. Code § 2314(2)(f).

In their moving brief, however, Starbucks seems to ignore the language of those specific provisions, instead, as stated, arguing that the claims fail because Plaintiffs' have not alleged that the Products were unfit for human consumption. Motion at 17-18. In their reply, however,

Defendants additionally argue for the first time that Plaintiffs' claims fail because "Plaintiffs have not alleged that any statements on the [Products'] container or labels are misleading and state only that they were misled by the [P]roducts' names on Starbucks menu boards." Reply at 8. But the Court need not address arguments made for the first time on reply. *See, e.g.*, *Lazaar v. Anthem Cos., Inc.*, No. 22 Civ. 3705 (JGK), 2023 WL 4015016, at *5 (S.D.N.Y. Jan. 25, 2023). Further, regardless of whether it is the case that "off-label representations are irrelevant to a claim for breach of the implied warranty of merchantability," Reply at 8 (quoting *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, MDL 13-2438 (PSG), 2017 WL 385042, at *11 (C.D. Cal. Jan. 24, 2017)), it is not clear to the Court that a description or name of an item on a menu board, with the item sold in person, does not constitute a "label" for purposes of either statutory provision. The Court therefore denies Defendants' motion to dismiss with respect to the Eighth and Ninth Causes of Action, though it takes no position as to whether the Products' names and descriptions on Starbucks's menu boards constitute "labels," as Plaintiffs have been afforded no opportunity to respond to that argument.

### D. Unjust Enrichment

Starbucks next argues that Plaintiffs' Tenth Cause of Action, which is titled "In the Alternative, Unjust Enrichment," Am. Compl. at 25, must be dismissed because it is "entirely duplicative of [Plaintiffs'] other claims," Motion at 18. Plaintiffs disagree, arguing that the elements of an unjust enrichment claim under New York law differ from the elements of a claim under the NYGBL and that its claims may be plead in the alternative. Opposition at 22. Plaintiffs also appear to cede that there is no cause of action for unjust enrichment under California law, *id.* at 23, but they argue that they may still maintain the claim under "common law principles of restitution," *id.*

Beginning with any New York claim, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). Courts regularly dismiss unjust enrichment claims as duplicative of NYGBL claims when an operative pleading fails to meaningfully distinguish the two. *See Duchimaza v. Niagara Bottling, LLC*, 619 F. Supp. 3d 395, 419-20 (S.D.N.Y. 2022) (dismissing unjust enrichment claim and collecting cases); *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 591-92 (S.D.N.Y. 2021). Here, Plaintiffs' claim for unjust enrichment is based on the exact same facts as their other claims, in that Plaintiffs allege that Starbucks misrepresented the content of the Products via the Products' names, knew its misrepresentations would increase sales and/or prices, and benefitted from those increases. Am. Compl. ¶¶ 109-115.

Plaintiffs argue that their unjust enrichment claim is not duplicative because the elements of an unjust enrichment claim differ from those of their NYGBL claims, citing three cases from the Northern and Western Districts of New York. Opposition at 22 (citing *Nuss v. Sabad*, No. 10 Civ. 279 (LEK), 2016 WL 4098606, at *11 (N.D.N.Y. July 28, 2016); *Warner v. StarKist Co.*, No. 18 Civ. 406 (GLS), 2019 WL 1332573, at *3 (N.D.N.Y. Mar. 25, 2019); *McCracken v. Verisma Sys., Inc.*, No. 14 Civ. 6248 (MAT), 2017 WL 2080279, at *8 (W.D.N.Y. May 15, 2017)). The Honorable Kenneth M. Karas explained why these exact three cases do not support Plaintiffs' current argument in *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 116-17 (S.D.N.Y. 2021). The Court adopts that analysis, which leaves only Plaintiffs' argument that their claim may be brought in the alternative. But that argument does not save Plaintiffs' claim. Although "[i]n New York, a plaintiff may plead unjust enrichment in the alternative, [ ] where an unjust enrichment claim is duplicative of other causes of action, it should be dismissed." *Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 466 (S.D.N.Y. 2019). Moreover, "the Court cannot conceive of

any set of facts upon which Plaintiffs would fail to establish their . . . statutory claims, but nonetheless succeed in proving unjust enrichment." *Cooper*, 553 F. Supp. 3d at 116 (internal quotation marks and brackets omitted). Therefore, any unjust enrichment claim under New York law must be dismissed as duplicative.

As for Plaintiffs' unjust enrichment claim under California law, "there is not a standalone cause of action for unjust enrichment, which is synonymous with restitution. . . . When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (internal quotation marks omitted). Yet in addition to this quasi-contract claim, Plaintiffs explicitly bring claims for violations of California's breach of express warranty statute based on contracts formed with Starbucks at the time of purchase. Am. Compl. ¶ 88. Many California courts have determined that such claims cannot be simultaneously advanced. *See Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1159 (S.D. Cal. 2021) (collecting cases); *see also Rodriguez v. Target Corp.*, No. 22 Civ. 2982 (LGS), 2022 WL 18027615, at *6 (S.D.N.Y. Dec. 30, 2022) (dismissing unjust enrichment claim under California law on the grounds that it was duplicative of a claim for breach of express warranty). Therefore, the Court dismisses Plaintiffs' unjust enrichment claims in their entirety.

### E. Common Law Fraud

Lastly, Starbucks argues that Plaintiffs have failed to state a claim for common law fraud, because they have not satisfied the federal pleading standard for scienter under Federal Rule of Civil Procedure 9(b). Motion at 19-20. Plaintiffs disagree, arguing that they have adequately alleged scienter through their general allegations that Starbucks knew the Products' names were false. Opposition at 23; *see also* Am. Compl. ¶ 22 ("As the entity responsible for the development,

naming, manufacturing, advertising, distribution and sale of the Products, Defendant knew or should have known that the Products falsely and deceptively represent to contain certain ingredients that they do not contain.").

To state a claim of common law fraud under New York law, a plaintiff must allege "(1) a material misstatement, (2) known by the perpetrator to be false, (3) made with an intent to deceive, (4) upon which the plaintiff reasonably relies, and (5) damages." *Quiroz v. Beaverton Foods, Inc.*, No. 17 Civ. 7348 (NGG), 2019 WL 1473088, at *10 (E.D.N.Y. Mar. 31, 2019) (internal quotation marks omitted) (quoting *Rotterdam Ventures v. Ernst & Young*, 752 N.Y.S.2d 746, 747-48 (3d Dep't 2002)).[6]

A claim sounding in fraud must meet the heightened standard set forth in Rule 9(b), which requires that the allegations "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To meet this requirement, a complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Duran*, 450 F. Supp. 3d at 352-53 (quoting *Eternity Glob. Master Fund, Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)). This is commonly described as the "who, what, where, when, and why" of the claim. *Chu v. Samsung Elecs. Am., Inc.*, No. 18 Civ. 11742 (GHW), 2020 WL 1330662, at *5 (S.D.N.Y. Mar. 23, 2020). "Moreover, a 'fraud claim should . . . plead scienter, and although it may do so generally . . . the plaintiff must still allege facts that give rise to a strong inference of fraudulent intent.'" *Hesse*, 463 F. Supp. 3d at

---

[6] The elements of common law fraud under California law are the same. *See Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1131 (N.D. Cal. 2009) ("Under California law, the elements of common law fraud are misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance, and resulting damages." (internal quotation marks omitted)).

472 (quoting *B&M Linen Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d. 474, 481 (S.D.N.Y. 2010)). A plaintiff may demonstrate this inference by (1) "alleging facts to show that defendants had both motive and opportunity to commit fraud" or (2) "by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Duran*, 450 F. Supp. 3d at 353 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006)).

Plaintiffs have failed to plead fraudulent intent. Plaintiffs allege only that Starbucks knew the Products did not contain all of the fruits listed in the Products' names, and that Starbucks "intended that Plaintiffs . . . rely on the Products' advertising, as if they had known the truth that the Products lacked all the ingredients promised by the Products' names, they would have [paid] less for the Products or would not have purchased them at all." Am. Compl. ¶¶ 23, 121-122. Courts have dismissed similar allegations for falling short of the Rule 9(b) standard. *See Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 166 (S.D.N.Y. Feb. 11, 2021) (finding allegations that the defendant merely knew a product label was false insufficient to allege fraudulent intent); *Barreto v. Westbrae Natural, Inc.*, 518 F. Supp. 3d 795, 808 (S.D.N.Y. 2021) (dismissing fraud claim because the plaintiff only pleaded "conclusory allegations" that the defendant's "'fraudulent intent is evinced by its failure to accurately identify the Products on the front label when it knew this was not true'"); *Hesse*, 463 F. Supp. 3d at 473 (concluding that the plaintiff's allegations that the defendant "knew or recklessly disregarded" that a representation was misleading and that the defendant intended for consumers to rely on such representations "as evidenced by [the defendant's] intentionally using [the] labeling" are the "sorts of conclusory and legal allegations, devoid of particularized facts giving rise to an inference of scienter" that are insufficient to satisfy Rule 9(b)).

As noted above, however, "conclusory assertions of intent" may suffice for a fraud claim "'if supported by facts giving rise to a strong inference of fraudulent intent.'" *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 579 (2d Cir. 2005) (quoting *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1993)). These facts could include "allegations of a motive to deceive and access to accurate information," *id.* (quoting *Cohen v. Koenig*, 25 F.3d 1168, 1173-74 (2d Cir. 1994)), as well as allegations which "constitute strong circumstantial evidence of conscious misbehavior or recklessness," *Lerner*, 459 F.3d at 290-91 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

Plaintiffs do not allege a specific motive for the fraud. Despite Plaintiffs' allegation that Starbucks acted to increase its prices and sales, Am. Compl. ¶ 122, "simply alleging a defendant's self-interested desire to increase sales does not give rise to an inference of fraudulent intent." *Duran*, 450 F. Supp. 3d at 354; *accord Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 464-65 (S.D.N.Y. 2016) ("[A] generalized profit motive . . . does not create the requisite 'strong inference' of fraudulent intent." (citing *Chill v. G.E. Co.*, 101 F.3d 263, 268 (2d Cir. 1996))); *see Quiroz*, 2019 WL 1473088, at *11; *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *25. As the Honorable Gregory H. Woods held when faced with an identical theory of fraudulent intent, the allegation that "'Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front label when it knew this was not true' . . . is insufficient because '[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a defendant's generalized motive to satisfy consumers' desire [or] increase sales and profits.'" *Campbell*, 516 F. Supp. 3d at 391 (quoting *Davis*, 297 F. Supp. 3d at 337) (alterations in original).

Nor have Plaintiffs alleged facts constituting strong circumstantial evidence of conscious misbehavior or recklessness, such as by showing a direct awareness of the deceptive nature of the Products' names. *Cf. Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 73-74 (E.D.N.Y. 2017) (finding that the plaintiff adequately pleaded facts supporting an inference of fraudulent intent by alleging that the defendant sponsored a study, the results of which refuted the claims made on the defendant's label); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 473 (E.D.N.Y. 2013) (finding a sufficient inference of fraudulent intent when the plaintiffs pointed to the lack of supporting evidence for the defendant's health claims, a study that contradicted the defendant's statements, and Federal Trade Commission settlements regarding similar claims of fraudulent misrepresentations). Other than Plaintiffs' conclusory allegations, nothing in the Amended Complaint indicates more than merely Starbucks's awareness that the Products' names failed to reflect their actual ingredients. As stated, this is not enough to state a claim for fraud. Therefore, the Court grants the motion to dismiss the Eleventh Cause of Action.

## F.     Leave to Amend

Lastly, the Court considers whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Plaintiffs have asked the Court for leave to amend their Amended Complaint in the event the Court grants any part of Starbucks's motion. Opposition at 24. The Court grants leave to amend the Eleventh Cause of Action in the event Plaintiffs believe they can plead facts that would adequately state a claim upon which relief may be granted. Because most of Plaintiffs' claims survive, Starbucks would not be unduly prejudiced by an amendment and are on notice as to the basic circumstances underlying Plaintiffs' claims. And while Plaintiffs amended their original Complaint after Starbucks filed a motion to dismiss, Dkt. 15, the original Complaint did

not bring a cause of action for common law fraud and McAllister was not a party to that original Complaint. The Court emphasizes, however, that Plaintiffs should amend only if they are able to resolve the pleading deficiencies in the Eleventh Cause of Action with respect to scienter as outlined at *supra* III.E. Leave to amend the Tenth Cause of Action for unjust enrichment is denied, however. Any amendment to the unjust enrichment claim in the Tenth Clause of Action would be futile as duplicative.

## IV. Conclusion

For the reasons stated above, the Court grants the motion to dismiss in part and denies it in part. The Court grants the motion with respect to the Tenth and Eleventh Causes of Action. The motion is denied with respect to the first nine Causes of Action. In the event Plaintiffs decide to file another amended complaint, they must do so within thirty days of this Opinion and Order.

Counsel shall appear before the undersigned for an Initial Pretrial Conference ("IPTC") in accordance with Rule 16 of the Federal Rules of Civil Procedure on October 18, 2023, at 11:30 a.m. via telephone. At the scheduled time, counsel for all parties should call (866) 434-5269, access code 9176261. By October 11, 2023, the parties shall also submit to the Court a proposed case management plan and scheduling order, a template of which is available at https://www.nysd.uscourts.gov/hon-john-p-cronan. The Clerk of Court is respectfully directed to close the motion pending at Docket Number 23.

SO ORDERED.

Dated: September 16, 2023
      New York, New York

JOHN P. CRONAN
United States District Judge